[No. 24712. Department Two. May 21, 1934.]

Hugo C. Lambach, *Respondent*, v. Carl E. Lundberg, *Appellant*, Peoples Bank & Trust Company, *Defendant*, The Filmograph Corporation, *Respondent*.[1]

[1]Reported in 33 P. (2d) 105.

*Battle, Hulbert & Helsell* and *Geo. D. Lantz,* for appellant.

*Frank R. Jeffrey, H. Sylvester Garvin,* and *Stewart N. Lombard,* for respondents.

GERAGHTY, J.—This action was brought by the plaintiff, Hugo C. Lambach, against the defendant Carl E. Lundberg, for rescission of contracts, under the terms of which the plaintiff purchased from the defendant a system developed by him for building abstract plants, together with certain mechanical devices for copying by photography public and other records.

As the interest of the intervening corporation is the same as the plaintiff's, and the defendant People's Bank and Trust Company is merely an escrow holder, for purposes of convenience the case will be treated as one between the plaintiff and defendant.

The defendant had been engaged in the abstract business for many years, and prior to 1926 had been employed by several abstract companies in Spokane. In that year, he removed to Seattle, where he was employed in building a new abstract plant for the Puget Sound Title Insurance Company. In building this plant, photography was used, and defendant had developed certain systems and devices which were claimed to have greatly shortened the time required in producing the work, with a resulting saving of cost. By 1928, the installation of that plant was substantially completed, and defendant thereafter devoted his attention to promoting his system and seeking to invest capital in its development and promotion. He called his methods the Lundberg Systems, and issued circulars and other printed matter explaining the sys-

tem and the manner in which the Puget Sound Title Company's plant had been produced and the saving in time and money accomplished. He was introduced to plaintiff, interested him in his system and devices, and on April 26, 1930, a preliminary contract was entered into, under the terms of which, for a down payment of $2,500, plaintiff acquired the right to purchase all of defendant's systems and devices for an additional $22,500.

Subsequently, on July 9, 1930, plaintiff in the meantime having determined to exercise his option, a permanent agreement was entered into between the parties, by the terms of which the plaintiff acquired defendant's systems and devices. This second agreement recited the ownership by the defendant of the right to manufacture, use and dispose of a photographing device used in duplicating records on a continuous film, as well as the right to manufacture, use and dispose of sundry other devices, apparatus, machines and equipment to be used in connection with the building of title insurance and abstract plants and in connection with industrial, financial and commercial institutions in general; also certain methods for indexing such plants and business records based upon sound rather than upon spelling of the names indexed—all of these methods and systems being known and recognized in business as the Lundberg Systems.

The agreement also recited that the defendant had either applied for, or was about to apply for, certain patents in connection with these devices and systems, and had theretofore conceived, devised and developed certain formulas and equipment for developing the film used in such devices and for making photoprints and enlargements; all of which were conveyed to plaintiff under the agreement. The agreement scheduled in detail the various processes, systems, devices and me-

chanical appliances constituting the system, including "secret processes, methods, contrivances, treatments and manipulations" regarding the construction of a camera, called filmograph, and its parts and accessories.

Under the terms of the first agreement, the plaintiff, if he exercised his right to purchase, was to organize a corporation for taking over and promoting the business. This corporation, the intervener here, was organized by the plaintiff, defendant being one of its officers, and plaintiff transferred to it the rights acquired from defendant.

In addition to the cash purchase price, defendant was to receive as a royalty five per cent of the gross income from the business; this royalty to be not less than five hundred dollars a month, beginning November 1, 1930. Defendant was to devote all his time to the supervision and manufacture of machines and work out new ideas in connection with the development of the business. This service was to be rendered without charge until August 1, 1930, and thereafter he was to receive a salary of five hundred dollars per month for such time as the trustees of the company might desire to employ him.

In his complaint, the plaintiff alleged that he was induced to enter into the agreements with defendant by fraudulent misrepresentations on defendant's part; that the defendant represented that the systems, processes and devices were original and patentable, and that he had applied for patents upon some of them; that these inventions had been perfected and employed commercially, and their commercial worth established; that they were especially valuable for use in the building of title insurance and abstract plants, and that, with them, the work of plant building could be done in one-quarter of the time and with one-half the cost of

work done by the methods and devices in common use; that he had made a survey of the field for the use of his inventions, and with an investment of five thousand dollars sufficient business could be procured to net a profit of two hundred thousand dollars a year; that under no other system could clear records be made, and that he had perfected secret devices which enabled him to make perfect prints and reproductions; that in these secret devices, which he would not disclose, rested the chief value of his inventions; that the secret device was in a camera which could be produced at a cost of not more than six hundred dollars for the first, and that additional cameras could be built in lots of five or more at a cost of two hundred dollars to three hundred dollars; that the first camera could be completed in not more than sixty to ninety days, and an enlarging device in two weeks, at a cost not exceeding one hundred twenty-five dollars; that, by September 1, 1930, the company would be earning sufficient money to pay the defendant a royalty of five hundred dollars a month, as well as a salary from the business which the defendant had also contacted.

The defendant, in his answer, denied making any misrepresentations in relation to his systems and inventions; and alleged affirmatively his long experience in the abstract business, as a result of which he had devised, originated or invented methods, forms, mechanical devices, apparatus and equipment, and improvements thereof, including a form of name index and photographic camera employing moving picture principles and mechanical devices and apparatus for making projectors of film images adaptable for use in compiling tract indexes, all being generally known as the Lundberg Systems; that the systems had been, at all times since, and long prior to, the execution of the contracts, capable of effecting a saving over other sys-

tems known to the defendant of approximately three-fourths of the time and half the cost of building modern abstract and title insurance plants; that two such plants were built in accordance with the system prior to the execution of the contracts, thereby establishing the fact that abstract plants could be built by the system for less money than by any other system known to the defendant.

That he believed, at all times prior to the execution of the contract, that a business venture of advertising and selling nationally the service of building abstract and title plants, and the other uses to which his system was adapted, could be made profitable and successful by any person or corporation with the necessary experience and financial resources to provide proper facilities and personnel, and to properly advertise and promote the sale of such service commercially, the extent of the profit or success being dependent upon the extent of such experience and financial resources, and the use thereof in properly advertising and promoting the sale of the service; that the plaintiff was without the necessary business experience or financial resources to properly advertise or promote the sale of the service commercially.

That, if defendant made any statements to the plaintiff as to the business which could be procured with a moderate or other investment of capital, or as to the net profits which could be realized from such business, the same was an expression of opinion, and if a statement of fact, the same was based upon plaintiff's performance of his agreement and upon an expected improvement in general business conditions; that, if the success of the business venture has been less than he so stated, it was the result of plaintiff's failure and neglect, and of the failure of general business conditions to improve, as expected. He further alleged

that, before making the contracts, the plaintiff had been fully informed of all matters in relation to his system, and that, if any misrepresentations were made in the first instance, plaintiff, by his subsequent course of conduct and dealings, was estopped to claim any relief in this action.

The court rendered judgment rescinding the contracts and granting incidental relief. The defendant appeals.

The record here is so voluminous that it is impossible to give even a serviceable abstract of it in the space permitted for an opinion. We have, however, read it carefully and in detail, and cannot escape the conclusion that the trial court was warranted in finding there had been a complete failure of consideration, and that the representations made by appellant to induce the respondent to make the contracts were untrue and calculated to mislead him. Undoubtedly, some of the representations made were matters of opinion, but others were essentially statements of fact upon which respondent had a right to rely.

Again, some of the representations which ordinarily would be regarded as mere expressions of opinion, when considered in the light of the special knowledge professed by appellant, entitled respondent to rely upon them. Appellant had been engaged in the abstract business for many years, and professed to be an expert in the business and to have had peculiar and special experience in relation to the building of title insurance and abstract plants and the use of photographic devices in their operation. He claimed to have so perfected his systems, processes and mechanical devices that no other methods or devices could successfully compete with them; and that their success and exclusive character had been demonstrated by practical experience in work that had already been accom-

plished. He claimed to have studied the commercial possibilities of his system throughout the country, and assured respondent of the possibilities of great profit with the investment of a moderate amount of capital.

Respondent, on the other hand, while a man of considerable experience in some lines of business, was not familiar with the abstract and title business, or with any of its details, and relied upon the representations of the appellant in the justified belief that they were warranted in fact.

"It is, of course, sometimes difficult to determine whether a given statement is one of opinion or one of fact, as the subject matter, the form of the statement, the surrounding circumstances, and the respective knowledge of the parties each have a bearing upon the question; and there may be a want of one or more of the controlling circumstances. But there is a distinct line of demarkation between the rule for which the appellant contends and the one here applicable. If one merely states, that in his opinion, no matter what form the words may take, a given result will follow from a given act, no action will lie upon the expression, no matter how much another may have relied thereon to his injury. But if he states that he has, by reason of his observations and experience, particular knowledge of the subject, and knows because of his particular knowledge that a given result will follow from the given act, an action will lie thereon, if it is falsely made, by one who has acted thereon to his injury. The distinction is that, in the one instance, there is merely the expression of an opinion, while in the other, there is a statement of fact blended with the expression of opinion; there is an implied assertion that he knows facts which justify and make certain his opinion. The representations used in the instant case fall within the latter rule. There was a representation of knowledge of particular facts on which the expression of opinion was based, facts of which the agent had knowledge but which were unknown to the purchaser." *Holcomb &*

*Hoke Mfg. Co. v. Auto Interurban Co.,* 140 Wash. 581, 250 Pac. 34, 51 A. L. R. 39.

Appellant exhibited to respondent a circular which he had issued describing the Lundberg systems, in which it was stated that patents were pending on the Lundberg camera and methods. No patents were pending at the time the contracts were entered into; the fact being that applications for patent of the system had been denied a considerable time before. The peculiar merit of his camera, as he described it, lay in the use of certain secret rings inserted in the lens, which neutralized the effect of strong rays of light, thereby producing results not possible with any other known camera. These rings were not delivered to respondent until after the preliminary contract was entered into, and it appears from the testimony that the rings, whatever their merit, were not then fully perfected, and that, later, appellant produced another set of rings which, upon demonstration by experts, proved to add nothing to the serviceability of the camera. As good pictures could be produced without as with them. Applications for patents made in the United States and Canada after respondent had purchased the systems and devices were rejected.

Without the exclusive and non-competitive qualities represented by him, appellant's system and devices were of little value. As pictured to respondent, with their commercial possibilities throughout the country, they possessed "the potentiality of wealth beyond the dreams of avarice."

Finding that respondent was induced to make the contracts on misrepresentations that amounted to fraud, and that he parted with his money without receiving a consideration therefor, we are brought to the second question in the case,—whether respondent was

put upon notice, and is estopped by reason of delay in bringing his action to rescind. It is true he made the contract under conditions that ordinarily would challenge caution. It appears that the essential feature of the camera built by appellant was the so-called secret rings. These rings the appellant would not disclose until after the contract had been made, and even then respondent did not see them, as they were incorporated into a camera. But he relied upon the truth of the representations made by appellant, and it will not now lie in appellant's mouth to say that respondent should not have relied upon his representations, and that, having relied upon them, he is to suffer for his confidence.

Much correspondence was offered in evidence by appellant tending to show that respondent had expressed satisfaction with the work accomplished by appellant's systems and devices. We think it may be fairly said of this correspondence that it was the expression of an opinion entertained in reliance upon the representations made by appellant. It was only when the knowledge was brought home to him that there were other devices in use, at least as good as his own, that he employed Luke S. May, well known as an expert in photographic appliances, to investigate. Mr. May's study demonstrated that the secret rings had no value, and that as good pictures could be made without as with them. This examination was made in December, 1931. The suit was begun the following January.

In this connection, it is to be borne in mind that the appellant's camera was not perfected at the time the contracts were entered into; that the appellant was constantly experimenting and making changes; and that the second set of secret rings given to respondent after the contracts were entered into were different

from those in use before. While the contracts were made in April and July, 1930, the first camera was not completed until May, 1931. Respondent's disillusionment came by degrees, culminating in May's report.

There is no hard and fast rule defining diligence. Each case is dependent upon its own circumstances.

"Rescission is denied where the facts are plain and were understood, or might with reasonable diligence have been understood; not where the facts are disputed or concealed. Diligence or want of diligence in this class of cases cannot be measured arbitrarily. This is the import of the case of *Freeman v. Gloyd,* 43 Wash. 607, 86 Pac. 1051. We believe the rule to be universal in this country that upon rescission the property must be returned within a reasonable time. The rule is likewise established that what is a reasonable time is a relative question to be determined by the facts of the instant case." *Thompson v. Rhodehamel,* 71 Wash. 24, 127 Pac. 572.

The judgment of the lower court will be affirmed.

BEALS, C. J., BLAKE, HOLCOMB, and TOLMAN, JJ., concur.